Hillsborough,
No. 4212.

STATE *v.* BERTRAND L. BARON.

Submitted October 6, 1953.
Decided October 30, 1953.

*Louis C. Wyman*, Attorney General, *Elmer T. Bourque*, Law Assistant and *Conrad Danais*, county solicitor, for the State.

*Daniel J. Healy* for the defendant.

BLANDIN, J. The defendant excepted to the solicitor's argument that "Then his own wife takes the stand, and she tells you my husband had maybe two drinks, maybe three, maybe more. Her own words." What she actually said relative to the number of drinks her husband had was "Two or three drinks; or he might have even had four." It seems plain that the solicitor's argument was well within the bounds of this testimony and the exception is overruled.

Another exception relates to the argument that a friend of the defendant "bought" more than one drink. An examination of the record on this score reveals conflicting testimony from which an inference could properly be drawn in accordance with the solicitor's statement to the jury. In any event, the Court charged that if "either party has misquoted the evidence . . . or drawn any unreasonable inference therefrom, you will disregard it and take your own recollections entirely." In the absence of a request by counsel to have the record read, we believe any possible error was cured by this charge. *State* v. *Bass*, 93 N. H. 172, 178.

Finally, the defendant complains that the argument that at the time of the accident the alcoholic content of his blood must have been 24/100 or 25/100 of 1% was unwarranted. The record shows according to his own testimony that the defendant finished his last drink about 11:30 P. M. The accident happened at approximately 12:30 A. M. and the alcometer test to determine the alcoholic content of the defendant's blood took place at about 3:00 A. M. It then showed a reading of 19/100 of 1%. In cross-examination of the physician who made the test it was brought out by defendant's own counsel that alcohol "burns" itself out in a person's system at a rate of between 2/100 to 4/100 of 1% per hour, and that complete absorption takes place within a minimum of one to a maximum of two hours. The doctor further said that at the time of the examination the alcoholic content of the defendant's blood

was less than at its "peak," although not knowing at what time the defendant ceased drinking, he could not tell when the peak came nor the exact content at the time of the accident. It is clearly reasonable to argue from this testimony that if the defendant, as he admits, ceased drinking at about 11:30 P. M., absorption was complete between 12:30 A. M. and 1:30 A. M. If the alcoholic content of his blood was dropping at the rate of between 2/100 and 4/100 of 1% per hour, it is a fair assumption that the content at 12:30 A. M. when the accident took place ranged from a maximum of 29/100 of 1% to a minimum of 22/100 of 1%. When it is further considered that there was testimony that the alcometer favors the defendant by giving a reading as much as 2/100 below the actual alcoholic content of the blood, the propriety of the solicitor's argument seems unassailable. There being no further exceptions briefed or argued, the order is

*Judgment on the verdict.*

All concurred.