Cheshire
No. 80-269

THE STATE OF NEW HAMPSHIRE

v.

THOMAS M. LITTLE

September 16, 1981

766

*Gregory H. Smith*, attorney general (*Richard C. Nelson*, assistant attorney general, on the brief and orally), for the State.

*Goodnow, Arwe, Ayer, Prigge & Gardner*, of Keene (*John D. Wrigley* on the brief and orally), for the defendant.

BROCK, J. In this criminal case the defendant appeals his conviction on two counts of sale of a controlled drug, RSA 318-A:2, after a trial by jury in the Cheshire County Superior Court (*Contas, J.*). At trial, the defendant did not contest the fact that he had sold marijuana to an undercover agent of the State police, but he did raise the affirmative defense of entrapment, RSA 626:5.

On appeal, the defendant, through new counsel, raises numerous issues. He claims that the trial court erred in allowing the State to produce rebuttal testimony tending to show the defendant's predisposition to commit the crime, that due process prohibits placing the burden of establishing entrapment on the defendant, that the court's jury instructions were inadequate, that he was denied his right to a speedy trial, and that the trial court erred in not setting aside the verdict. In each instance we disagree and, therefore, we affirm the conviction.

During trial, the defendant testified that he had sold marijuana to the undercover agent on the dates alleged in the indictment. He also testified that he smoked marijuana with some regularity and that at various times had as much as one pound of marijuana in his home. However, the defendant claimed that he had never sold drugs on any other occasion, that he was not so inclined, and that the only reason he sold the drugs in this instance was because he was coerced into doing so by a drug dealer acquaintance. At the time of the sales, the defendant was unaware that the dealer had become a police informant.

According to the defendant, the dealer requested his help in a scheme that would enable the dealer to form an association with a group of professional, well-organized suppliers of illegal drugs. In addition, he alleged that the dealer threatened to see that the defendant would lose his chiropractic license if he did not cooperate with the informant. The informant, however, testified that he had never made any such threats.

Under the scheme alleged by the defendant, he was to sell marijuana to a friend of the informant. That "friend" turned out to be an undercover police officer, and, after he had made two separate sales, the defendant was arrested. After the defendant had testified at trial to the foregoing, the State introduced rebuttal testimony that tended to show that the defendant was predisposed to this type of drug activity. It is the defendant's contention that the admission of this testimony was improper and constitutes reversible error.

 The entrapment defense is designed to prevent persons from being convicted of a crime manufactured by law enforcement officers. *State v. Bacon*, 114 N.H. 306, 308, 319 A.2d 636, 638–39 (1974). Generally, the determination of whether a defendant has been entrapped is made by reference to one of two criteria, one a subjective test and the other an objective test. *State v. Bacon*, 114 N.H. at 308, 319 A.2d at 639; *see State v. Snow*, 98 N.H. 1, 93 A.2d 831 (1953); Cronin, *The Law of Entrapment in Massachusetts and the First Circuit*, 14 SUFFOLK U. L. REV. 1203, 1206–10 (1980). The subjective test involves an inquiry into "the intent or predisposition of the defendant to commit the crime." *State v. Bacon, supra* at 308, 319 A.2d at 639. That inquiry focuses on the defendant, the person in the courtroom who is accused of committing the crime, and if he is found to have been predisposed to commit the crime, the defense will fail. *United States v. Russell*, 411 U.S. 423, 433 (1973).

In assessing whether the defendant is criminally predisposed, the actions of the government and its agents are not critical factors unless their conduct "is so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction. . . ." *See id* at 431–32. Therefore, when the subjective test is utilized to determine whether a defendant has been entrapped, admission of any evidence that tends to show "[t]he predisposition and criminal design of the defendant [is] relevant." *Sorrells v. United States*, 287 U.S. 435, 451 (1932); *United States v. Henciar*, 568 F.2d 489, 492 (6th Cir. 1977), *cert. denied*, 435 U.S. 953 (1978). It follows, then, that if the entrapment test

followed in this State is the subjective one, the defendant's argument that predisposition evidence was wrongly admitted must fail because such evidence is relevant. It is for this reason that the defendant argues strongly that New Hampshire employs the objective test.

■■ When the objective test is used, the inquiry focuses not upon the defendant's predisposition, but rather upon the conduct employed by law enforcement officials and their agents in providing the defendant with an opportunity to commit the crime. *United States v. Russell*, 411 U.S. 423, 441 (1973) (Stewart, J., dissenting). Under this theory, evidence of the defendant's predisposition is not relevant. *Id.* at 446 (Stewart, J., dissenting). The defendant argues that the objective test should have been employed and that the admission of predisposition evidence at trial was reversible error. *See People v. Barraza*, 23 Cal. 3d 675, 153 Cal. Rptr. 459, 591 P.2d 947 (1979). However, our review of the record indicates that it was the defendant himself who first raised the issue of predisposition.

■■ The defense of entrapment is not one of constitutional dimension under the federal constitution. *United States v. Russell*, 411 U.S. at 432–33. However, constitutional due process can be violated if law enforcement tactics and activities used against the defendant violate "fundamental fairness [and are] shocking to the universal sense of justice. . . ." *Id.* at 432. As a general rule, the federal Congress and state governments are free to adopt their own rules governing its applicability in their respective jurisdictions. *See United States v. Russell*, 411 U.S. at 433.

■■ Our State legislature has articulated the defense of entrapment as follows:

> "It is an affirmative defense that the actor committed the offense because he was induced or encouraged to do so by a law enforcement official or by a person acting in cooperation with a law enforcement official, for the purpose of obtaining evidence against him and when the methods used to obtain such evidence were such as to create a substantial risk that the offense would be committed by a person not otherwise disposed to commit it. However, conduct merely affording a person an opportunity to commit an offense does not constitute entrapment."

RSA 626:5. Clearly, the language of the statute does not state whether an objective or subjective test is to be utilized in its appli-

cation. When this court last had occasion to consider RSA 626:5, we repeated an observation that we had made before the statute was enacted: "[T]he defense [of entrapment] is becoming less subjective and more objective." *State v. Bacon*, 114 N.H. at 308, 319 A.2d at 639 (quoting *State v. Groulx*, 106 N.H. 44, 47, 203 A.2d 641, 642 (1964)). Our decision in *Bacon*, rendered after RSA 626:5 became effective, did not label the statutory defense of entrapment as being either objective or subjective. *See State v. Bacon*, 114 N.H. at 308, 319 A.2d at 639. *Bacon* implicitly recognizes that the determination of whether a legitimate entrapment defense exists may involve elements of both the subjective and the objective test.

 In *Bacon*, we observed that the defendant had offered no evidence to show that the police had done anything more than "afford him 'an opportunity to commit' the offense of which he was convicted." *State v. Bacon*, 114 N.H. at 309, 319 A.2d at 639 (quoting RSA 626:5). The focus in that case was on the conduct of the police, the prime focus of the objective test. Because there was no evidence involving police conduct offered in *Bacon*, we held that the defense was not supported by the evidence, and for that reason the trial court had not erred by refusing to instruct the jury on the entrapment defense. *Id.* Contrary to the defendant's argument, *Bacon* does not hold that only the conduct of the police is relevant to the entrapment defense. It merely holds that, in a case where entrapment is an issue, if no evidence of police conduct is admitted into evidence there is no need to instruct the jury on that defense. *State v. Bacon*, 114 N.H. at 309, 319 A.2d at 639. That is, RSA 626:5, by its terms, does not mandate that the inquiry focus solely on the conduct of the police, because in order for the defense to succeed the conduct must be "such as to create a substantial risk that the offense would be committed by *a person not otherwise disposed to commit it.*" RSA 626:5. Disposition, then, becomes relevant to the determination. The question which arises is whether predisposition is to be determined by reference to a universal hypothetical person, or to a particular defendant and his predisposition to commit the particular crime.

 Prior to the enactment of RSA 626:5, this court, in *State v. Campbell*, 110 N.H. 238, 241, 265 A.2d 11, 14 (1970), stated that when the defense of entrapment is raised but the evidence "support[s] a finding that *the defendant* was ready to commit the crime . . . ," the conviction will be upheld. (Emphasis added.) Clearly, this establishes that evidence of the defendant's predisposition is relevant and admissible. Although *Campbell* was decided

prior to the effective date of RSA 626:5, the commission for the revision of the criminal laws had already proposed the statute to the legislature at that time, and it was quoted in *Campbell. Id.* at 241, 265 A.2d at 13–14. Indeed, the *Campbell* decision relied upon the then proposed entrapment statute which was subsequently adopted and is now RSA 626:5. *Campbell* thus retains its vitality, and we hold that the trial court did not err in allowing the State to introduce rebuttal predisposition evidence, *see State v. Campbell,* 110 N.H. at 241, 265 A.2d at 14, especially where, as here, it was the defendant who first raised the issue of predisposition and testified to the effect he was not so predisposed. "[I]f the defendant seeks acquittal by reason of entrapment he cannot complain of an appropriate and searching inquiry into his own conduct and predisposition as bearing upon that issue." *United States v. Russell,* 411 U.S. at 429 (quoting *Sorrells v. United States,* 287 U.S. 435, 451 (1932)).

 The defendant next argues that requiring him to bear the burden of proof in establishing his entrapment defense violates due process and that, therefore, it was error for the court to instruct the jury that it was the defendant's burden to establish that defense by a preponderance of the evidence. We note, however, that no objection was taken to the court's jury instructions and the matter is therefore not properly before us. *State v. Donovan,* 120 N.H. 603, 608, 419 A.2d 1102, 1105 (1980). Moreover, entrapment is a limited defense, *United States v. Russell,* 411 U.S. at 435, and is rooted "in the notion that Congress [or state legislatures] could not have intended criminal punishment for a defendant who has committed all the elements of a proscribed offense, but was induced to commit them by the government." *Id.* The various legislative bodies are free to adopt any definition of the defense of entrapment they deem appropriate. *Id.* In this State, the legislature has defined the defense in RSA 626:5, and, in RSA 626:7, it placed the burden of proving that defense upon the defendant. Because the burden of proving all the elements of the crime charged beyond a reasonable doubt remains with the State, the legislature may properly require a defendant to establish the defense of entrapment by a preponderance of the evidence. Such an apportionment of burdens violates no constitutional guarantee. *Cf. State v. Rullo,* 120 N.H. 149, 152, 412 A.2d 1009, 1011 (1980); *Novosel v. Helgemoe,* 118 N.H. 115, 125, 384 A.2d 124, 131 (1978).

 Next, the defendant argues that the trial court failed to adequately instruct the jury that the informant's conduct could

serve as the basis for the defense of entrapment. Again, no objection was taken to the trial court's instructions and the court specifically inquired whether counsel desired to approach the bench after the instructions had been given. Moreover, the trial court read RSA 626:5 in its entirety to the jury and therefore advised it that inducement "by a person acting in cooperation with a law enforcement official . . ." was encompassed in the entrapment defense. We find no error.

■■■ The defendant's last argument is that he was denied his right to a speedy trial because the time between his arrest and jury trial was approximately fourteen months. We must, therefore, consider four factors in determining whether the defendant's right to a speedy trial has been violated: (1) the length of the delay, (2) reasons for the delay, (3) whether the defendant asserted his right, and (4) any prejudice to the defendant. *Barker v. Wingo*, 407 U.S. 514, 530–33 (1972); *State v. Weitzman*, 121 N.H. 83, 86, 427 A.2d 3, 5 (1981). Of these four factors, we place particular emphasis on the latter two. *State v. Fraser*, 120 N.H. 117, 120, 411 A.2d 1125, 1127 (1980). In that regard, we note that the defendant did not assert his right to a speedy trial until one week before the trial was held. During those fourteen months, the defendant remained free on bail. Under these circumstances, "the defendant's failure to demand a speedy trial may be weighed against him." *See State v. Weitzman*, 121 N.H. 83, 87, 427 A.2d 3, 5 (1981).

■■■ The defendant points to the dimming of memories and the fact that the defendant lost his license to practice chiropractic medicine and claims these constituted undue prejudice. The passage of time, and the resulting impairment of memories, however, is not a sufficient basis "to wrench the Sixth Amendment from its proper context." *See United States v. Marion*, 404 U.S. 307, 321–22 (1971). Memories begin to dim almost immediately after an event occurs, and if that were to be a sufficient basis to hold that a defendant had been prejudiced to the point where he had been denied his right to a speedy trial, we would have to disregard the considerations we normally place upon the delay "with regard to the practical administration of justice." *See State v. Cole*, 118 N.H. 829, 830, 395 A.2d 189, 190 (1978). "Absent a rule or statute setting time limits, a defendant has a responsibility to assert his right to a speedy trial." *State v. Weitzman, supra* at 86, 427 A.2d at 5.

■ Moreover, the record reveals that the attorney general's office had no part in causing the delay, and at one point it even requested the court to set a trial date as soon as possible. Under

774

these circumstances, we are of the opinion that any delay in this case resulted from the "practical administration of justice" and was not violative of the defendant's constitutional right to a speedy trial.

Accordingly, the order is

*Exceptions overruled; affirmed.*

BATCHELDER, J., did not sit; the others concurred.